**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEFFERY WILLIAMS,**

                        **Plaintiff,**


     **vs.**                                    **9:06-CV-0911**


**JAMES WOOD; Albany Police Officer,**

                        **Defendant.**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

                   **DECISION and ORDER**


     Plaintiff Jeffery Williams commenced this action pursuant to

42 U.S.C. § 1983 against Albany Police Department Officer James

Wood ("Defendant"), alleging false arrest, the excessive use of

force and racial profiling arising out of an incident that

occurred on November 22, 2005.  Presently before the Court is

Defendant's motion for summary judgment pursuant to Fed. R. Civ.

P. 56 (c) seeking dismissal of Plaintiff's claims.

**I.    FACTS**

     The following is taken from the parties' affidavits,

depositions, declarations and respective Local Rule 7.1(a)(3)

statement of facts and are construed in the light most favorable

to Plaintiff.

Plaintiff's version of the facts is as follows.  On November 22, 2005 at approximately 11:30pm, he was riding in a brown and tan Ford Ranger pick-up driven by Mr. Joseph Szot.  <u>Plaintiff Depo</u>. at 22.  Szot was driving Plaintiff from a local auto garage to 45 South Ferry Street, a residence where Plaintiff was then staying.  <u>Id</u>. at 25.  Before reaching their destination, Plaintiff and Szot stopped in front of a house located on First Street.  Plaintiff got out of the vehicle and, while standing in the street, engaged  in a "brief conversation" with two unidentified individuals who had been sitting in front of the house. <u>Id</u>. at. 28-30.  Plaintiff does not recall the length of this conversation, though Szot estimates it lasted "about as long as it took me to roll and smoke my cigarette." <u>Szot Statement</u> at 2.  Plaintiff then returned to Szot's vehicle and proceeded to drive for a few blocks at which time they were pulled over by the police.

Plaintiff contends that Defendant approached the vehicle, opened Plaintiff's car door and pulled him out of the vehicle by his right arm in a "violent and out of control" manner. <u>Depo.</u> at 36; <u>Plaintiff's Complaint</u> at 7.  Standing to the side of the truck, Defendant then searched Plaintiff's person.  In the course of this search, Plaintiff alleges that he was hit and pushed by Defendant. <u>Depo.</u>at 38, 42.  Plaintiff was then placed in handcuffs. <u>Id.</u>  After being placed in handcuffs, Plaintiff

2

contends that Defendant searched the vehicle and planted a glass tube ("stem") containing a quantity of crack cocaine inside Plaintiff's eye glass case as it rested in the vehicle. Id. at 43-44.  Plaintiff claims Defendant told him to "take this as a lesson." Complaint at 7.  Plaintiff did not sustain any physical injuries from the arrest and later described the event as "a little, light rough-up, that's all." Depo at 35.

The facts as stated by Defendant are as follows.  Defendant and Albany Police Detective Al Martin were in an unmarked car performing surveillance of 299 ½ First Street, Albany, New York. Affidavit at 1.  This surveillance was in connection with "Operation Impact," an investigation of crimes involving illegal guns and drugs.  An earlier search of 299 ½ First Street revealed the presence of narcotics, related paraphernalia, and a shot gun. Id.  Based on the results of this earlier search, Defendant and Detective Martin believed that illegal drugs continued to be present at that location. Id.

In the course of the surveillance, Defendant observed Szot's pick up truck traveling east on First Street at a slow rate of speed.  The vehicle stopped in front of 299 ½ First Street. Defendant contends that he observed Plaintiff emerge from an area at or around 299 ½ First Street and approach Szot's pick up truck. Id at 2.  Defendant watched as Plaintiff stood in the

3

street conversing with Szot, the driver of the pick-up truck. According to Wood, Plaintiff then got into the passenger side of the pick-up truck and the vehicle resumed traveling east on First Street. Id

Believing a drug transaction had occurred, Defendant and Detective Martin followed the pick-up truck for one to three blocks before signaling the vehicle to pull over. Id. at 2,3. With the vehicle stopped, Defendant approached the passenger side of the pick-up truck where Plaintiff sat. Defendant alleges that because Plaintiff's right hand was hidden from view, resting near his waistband and underneath his coat, he asked Plaintiff to place his hands where they could be seen. Id. at 4. According to Defendant, Plaintiff refused this request. Id.

Defendant next contends that he requested Plaintiff to exit the vehicle to perform a pat-down search. As Plaintiff exited the pick-up truck, Defendant contends that he "maintained control over [Plaintiff's] right hand because it was still not visible." Id. at 4. Defendant next asserts that Plaintiff elbowed him in the chest area, attempted to push him, and acted in a combative manner. Id. With the assistance of Detective Martin, Defendant was able to restrain Plaintiff and perform a pat down search of his person. In the course of the search, Defendant alleges that he found the stem containing crack cocaine on Plaintiff's person.

4

Szot presents a third verison of the events.  According to Szot, he was driving Plaintiff, they stopped, Plaintiff "got out of the truck and approached a group that was sitting out on the front steps of a house" and "he talked to them for about as long as it took for me to roll and smoke my cigarette." Stoz Statement at 2.  Plaintiff then got back into the truck.  After driving for a few blocks, the police pulled them over. Id.  Szot contends that he heard Plaintiff and Defendant "having words," believed Plaintiff was "being wise with [the police]," and that Plaintiff said "F-You or something like that." Id.  Plaintiff denies using vulgar language, though he acknowledges being "upset." Depo at 42.  Szot asserts that "[a]fter the cops hit [Plaintiff] a couple of times they were able to get him handcuffed.  After they had him finally handcuffed, the cops showed me a crack pipe that they found under his seat." Stoz Statement at 2.

Plaintiff was subsequently arrested for loitering in the first degree in violation of N.Y. Penal Law § 240.36, criminal possession of a controlled substance in violation of N.Y. Penal Law § 220.03, and resisting arrest in violation of N.Y.§ Penal Law § 205.30.  On May 23, 2006, all charges against Plaintiff were dropped.  Plaintiff commenced the instant action asserting claims of false arrest, the excessive use of force, and racial profiling.

5

## II.   STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in a light most favorable to the non-moving party, _see_ Tenebaum v. Williams, 193 F. 3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV.P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non moving party.  Anderson v. Liberty Lobby, 477 U.S.242, 248, 106 S.Ct 2505 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotox Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v.Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

6

A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation.  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998).  Because there are cross-motions for Summary Judgment here, the Court construes the facts in favor of the non-moving party when deciding each motion.

**III. DISCUSSION**

    a. **False Arrest**

Plaintiff first alleges that he was falsely arrested.  To prevail on his claims under 42 U.S.C.§ 1983, Plaintiff must show that Defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. Palmieri v. Lynch, 392 F. 3d 73, 78 (2d Cir. 2004).  Claims for false arrest brought under 42 U.S.C.§ 1983 ("1983") rest on the Fourth Amendment right to be free from unreasonable seizures and are "substantially the same" as claims for false arrest under state law.  Taylor v. City of New York, 269 F. Supp. 2d 68, 74 (E.D.N.Y. 2003) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).  Under New York law, a plaintiff claiming false arrest must show: (1) he was confined; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not justified. Broughton v. State, 37

7

N.Y. 2d 451, 456 (1975).  The only point at issue in the instant matter is whether there was justification for Plaintiff's arrest.

Probable cause constitutes justification and therefore is "a complete defense to an action for false arrest." Bernard v. United States, 25 F. 3d 98, 102 (2d Cir. 1994).  Probable cause to arrest exists where the police officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in belief that the person to be arrested has committed or is committing a crime." United States v. Delossantos, 536 F. 3d 155 (2d Cir. 2008)(citations and internal quotation marks omitted).  As long as probable cause existed to believe that *some* crime was being committed, and not necessarily the crime or crimes identified by the arresting officer at the time of the arrest, a false arrest claim must fail. Jaegly v. Couch, 439 F.3d 149, 154 (2nd Cir 2006.)("A plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at that time of arrest."); Wallace v. City of Albany, 283 A.D.2d 872, 873 (3d Dep't 2001); In re William H., 264 A.D.2d 676, 677 (1st Dep't 1999).  "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."

<u>Weyant v. Okst</u>, 101 F. 3d 845, 852 (2d Cir. 1996).

Here, Plaintiff was charged with a violation of New York
Penal Law § 240.36.  That section provides that: "A person is
guilty of loitering in the first degree when he loiters or
remains in any place with one or more persons for the purposes of
unlawfully using or possessing a controlled substance."
Construing the evidence in the light most favorable to Plaintiff,
he was in a vehicle with Szot, the vehicle stopped in front of a
group of people sitting in front of a house, Plaintiff got out of
the vehicle and "briefly" spoke with the group, he returned to
the vehicle and was thereafter pulled over by the police.  These
facts, taken together with the surrounding circumstances known to
Defendant, gave Defendant probable cause to arrest Plaintiff for
loitering.  These surrounding circumstances include the facts
that Szot's vehicle was moving slowly, Plaintiff was having a
conversation with two unidentified persons in the street, the
conversation occurred at nighttime and the conversation occurred
in front of a house with a history of containing illegal
narcotics.  Further, the time, location and length of the
conversation resembled a drug transaction.  These facts are
sufficient to warrant Defendant's belief that Plaintiff was
loitering for purposes of using or possessing a controlled
substance.  Even assuming probable cause to arrest Plaintiff for
loitering did not exist, Plaintiff's actions and the surrounding

circumstances warrant the finding that Defendant had probable cause to believe that Plaintiff was committing some drug-related crime. See Jaegly,439 F.3d at 151.

Moreover, reasonable police officers in Defendants' position could disagree as to whether probable cause to arrest Plaintiff existed.  Because Defendant had arguable probable cause, he is entitled to qualified immunity. Sutton v. Duguid, 2007 U.S. Dist. LEXIS 35853 (E.D.N.Y. 2007) (citing Cerrone v. Brown, 246 F.3d 194, 202-03 (2d. Cir. 2001)).  Defendant's motion for summary judgment on the False Arrest claim is, therefore, granted.


### b. **Excessive Force**

Plaintiff also alleges that defendant used excessive force in effectuating the arrest.  Claims that law enforcement used excessive force in the course of an arrest are also analyzed under the Fourth Amendment reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989).  The Court must consider the totality of the circumstances faced by the officer on the scene to determine if the officers actions were objectively reasonable. Sullivan v. Gagnier, 225 F. 3d 161, 165 (2d Cir., 2000); Hemphill v. Schott, 141 F. 3d 412, 416-417 (2d Cir. 1998).  An objective test of reasonableness under the totality of the circumstances requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect

10

posed an immediate threat to the safety of others, and whether he was actively resisting arrest. Id at 165.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers ... violates the Fourth Amendment." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). A person who resists arrest, threatens, or assaults an officer justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit. Sullivan v. Gagnier, 225 F. 3d 166-67. Furthermore, "although the severity of a plaintiff's alleged injuries or lack thereof is not dispositive, it is nonetheless highly relevant to the reasonableness of the force applied." Johnson v. Police Officer # 7969, 2000 U.S. Dist. LEXIS 18521, 14 (S.D.N.Y. 2000).

Construing the evidence in the light most favorable to Plaintiff, he was driving in a car that stopped in the middle of First street, he got out of the car, stood in the street, engaged in a conversation with at least two individuals, returned to the car and resumed traveling east. After driving for a couple of blocks, the car was then pulled over by the police. According to Plaintiff, Defendant removed Plaintiff from the vehicle by grabbing his arm in a "violent and angry way." According to Szot's sworn statement, Plaintiff was "being wise with" Defendant and saying "F-You or something like that" to Defendant. Although Plaintiff denies he swore at Defendant, he acknowledges that he

11

was  "upset."  Plaintiff does not dispute that the house in front
of which he had stood was known to contain illegal narcotics and
a shotgun.  Plaintiff similarly does not dispute that Defendant
requested that Plaintiff make his right hand visible, that he
refused to comply with this request, or that Defendant maintained
control over Plaintiff's right hand because of this refusal.
Significantly, Plaintiff does not specify how many times he was
hit by Defendant, where on his body the alleged blows occurred,
or the severity of said blows.  In his deposition Plaintiff
characterized the alleged assault as "a little light rough-up,
that's all" and acknowledged that he sustained no physical
injuries from the alleged assault. Plaintiff Depo. at 35.

     Taken together, these facts support the finding that
Defendant's actions were objectively reasonable under the
circumstances.  It is undisputed that Defendant's use of force
did not occur until after Plaintiff refused Defendant's request
that he make his right hand visible and while Plaintiff was
upset.  Considering that Plaintiff recently had a brief exchange
with two individuals in the street in front of a house thought to
contain illegal drugs and a shotgun, it was objectively
reasonable for Defendant to have believed that Plaintiff, and
specifically Plaintiff's obscured right hand, caused a threat to
Defendant's safety or was an attempt to secrete contraband.  The
amount of forced used by Defendant, described by Plaintiff to

constitute "a little, light rough up," was objectionably reasonable given the circumstances and does not rise to a level sufficient to state a constitutional violation.

In the alternative, officers of reasonable competence could disagree about whether Defendant's use of force was excessive and, thus, Defendant is entitled to qualified immunity. <u>Jenkins v. City of New York</u>, 478 F. 3d 76, 87 (2d Cir. 2007). Defendant's motion for summary judgment on the Excessive Force claim is, therefore, granted.

   c. **Racial Profiling Claim**

Plaintiff next alleges that Defendant engaged in racial profiling, thereby violating his Equal Protection rights under the Fourteenth Amendment.  To prevail on an Equal Protection claim, Plaintiff must show that his "selection [was] based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights," <u>United States v. Berrios</u>, 501 F.2d 1207, 1211 (2d Cir.1974), and "that similarly situated individuals of a different race were not [arrested]." <u>United States v. Armstrong</u>, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); <u>Brown v. City of Oneonta, New York</u>, 221 F.3d 329, 337 (2d Cir.2000).

Here, Plaintiff asserts that Defendant  "used [him] as a target ... by removing the African American from the car." Compl. at 5.  Plaintiff submits no facts, records, analysis or data to

13

support his assertion that Defendant selected him on the basis of his race, nor has he submitted evidence to demonstrate that similarly situated individuals of a different race have not, or would not have been, arrested.  To the extent Plaintiff contends that he was treated differently from Szot, they were not similarly situated.  Unlike Szot, Plaintiff exited the vehicle in front of a known drug house, stood in the middle of the street and conversed with two unidentified individuals for a brief period of time.  Szot, on the other hand, remained in the car and smoked a cigarette.  Plaintiff's claim of racial profiling is based solely on the events of November 22, 2005 and his conclusory allegation that he was arrested on account of his race.

The Court, therefore, finds that no reasonable trier of fact could return a verdict in his favor.  Defendants motion for summary judgment on the Racial Profiling claim is, therefore, granted.


**IV.  CONCLUSION**

For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff' s Complaint is DISMISSED in its entirety.

14

Dated:January 23, 2009

Thomas J. McAvoy
Senior, U.S. District Judge